1  Frank S. Hedin (SBN 291289)
   fhedin@hedinhall.com
2  David W. Hall (SBN 274921)
3  dhall@hedinhall.com
   Hedin Hall LLP
4  Four Embarcadero Center, Suite 1400
   San Francisco, CA 94104
5  Telephone: (415) 766-3534
   Facsimile: (415) 402-0058
6

7  *Counsel for Plaintiff Amber Pickett*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER PICKETT, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| LMB MORTGAGE SERVICES, INC., d/b/a LOWERMYBILLS.COM, | |
| Defendant. | |

Plaintiff Amber Pickett, on behalf of herself and all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, the investigation of her counsel, and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters:

## NATURE OF ACTION

1. Plaintiff brings this action for legal and equitable remedies resulting from the illegal actions of the LMB Mortgage Services, Inc., doing business as LowerMyBills.com ("Defendant"), in transmitting SMS text message advertisements to Plaintiff's cellular device and the cellular devices of millions of others across the country, without "prior express written consent" within the meaning of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over this putative class action lawsuit pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper in this district because Defendant maintains its corporate headquarters in this district and because Plaintiff's claims arose in substantial part in this district.

## PARTIES

4. Plaintiff Amber Pickett is, and at all times mentioned herein was, an individual and a "person" as defined by 47 U.S.C. § 153(10) and a citizen and resident of Phoenix, Arizona.

5. Defendant LMB Mortgage Services, Inc., doing business as LowerMyBills.com, is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10). Defendant is, and at all times mentioned herein was, a loan marketing and computerized matching company headquartered at 12181 Bluff Creek Dr., Ste. 250 Los Angeles, CA 90094.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

6. In 1991, Congress enacted the TCPA to address consumer complaints regarding certain abusive telemarketing practices. The TCPA prohibits, inter alia, the use of automated telephone equipment, or "autodialers," to make any call, including sending a text message, to a wireless number absent an emergency or the "prior express consent" of the party called. And in the case of calls or text messages that constitute "advertisements" or "telemarketing", as defined by applicable regulations, the TCPA requires the "prior express <u>written</u> consent" of the called party before initiating such calls or texts via an autodialer.

7. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and texts are prohibited because such transmissions are a greater nuisance and invasion of privacy than live solicitation calls and receiving and addressing such calls and texts can

CLASS ACTION COMPLAINT

be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes or texts are used.

8. One of the most prevalent bulk advertising methods employed by companies today involves the use of "Short Message Services" (or "SMS"), which is a system that allows for the transmission and receipt of short text messages to and from wireless telephones. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1]

9. SMS text messages are directed to a wireless device through a telephone number assigned to the device. When an SMS text message is successfully transmitted, the recipient's wireless phone alerts the recipient that a message has been received. Because wireless telephones are carried on their owner's person, SMS text messages are received virtually anywhere in the world.

10. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11. Moreover, the transmission of an unsolicited SMS text message to a cellular device is distracting and aggravating to the recipient; intrudes upon the recipient's seclusion; wastes a quantifiable amount of available data on the recipient's cellular device, thereby reducing its data storage capacity; temporarily reduces the available computing power and application processing speed on the recipient's device; diminishes the available battery power, and thus shortens the battery life, of the recipient's cellular device; and

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited April 6, 2018).

requires expending a quantifiable amount of energy (i.e., electricity) to recoup the battery power lost as a result of receiving such a message.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (602) ***-4581 (the "4581 Number"). The 4581 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

13. In or about November 2018, including on or about November 7, 2018, Defendant transmitted or caused to be transmitted, by itself or through an intermediary or intermediaries, one or more SMS text message(s) to the 4581 Number without Plaintiff's express consent, written or otherwise, including the following message depicted in a screenshot taken from Plaintiff's cellular device:



14. The source of the SMS text message sent by Defendant to the 4581 Number was 60107, which is an SMS short code telephone number leased or owned by Defendant

or Defendant's agent(s) or affiliate(s) and is used for operating Defendant's text message program – specifically, for transmitting SMS text messages to consumers *en masse*.

15. The hyperlinked URLs appearing in Defendant's text messages, including the above-depicted text message sent to the 4581 Number and the millions of other unsolicited text messages sent to the numbers of the proposed Class members, direct the recipients to webpages that are leased, owned, or controlled by, and are operated and maintained by, the Defendant. At such webpages, Defendant makes available its loan referral and computerized matching services for profit.

16. Because Plaintiff is alerted by her cellular device, by auditory or visual means, whenever she receives an SMS text message sent to the 4581 Number, each unsolicited SMS text message that Defendant transmitted to the 4581 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion. Plaintiff became distracted and aggravated as a result of receiving each of Defendant's SMS text messages.

17. Defendant utilized an "automated telephone dialing system" to transmit the aforementioned text messages to the 4581 Number because such messages were sent from an SMS short code used to message consumers *en masse*; because Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial random or sequential numbers, or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion and without human intervention.

18. And indeed, Defendant transmitted the text messages at issue in this case to Plaintiff and all other putative class members in an automated fashion and without human intervention, with hardware and software that stores, produces and dials random or sequential numbers and/or receives and stores lists of telephone numbers.

19. The complained of SMS text messages sent by Defendant to the 4581 Number constituted an "advertisement" and/or "telemarketing" material within the meaning of the applicable TCPA regulations. This is because Defendant sent the message in order to advertise and market the commercial availability of its loan referral and computerized matching services for commercial profit.

20. Plaintiff never provided her "prior express written consent" or any other form of consent to Defendant or any affiliate, subsidiary, or agent of Defendant to transmit SMS text messages to the 4581 Number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

## CLASS ALLEGATIONS

21. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

> All persons in the United States who received one or more SMS text message from Defendant or an affiliate, subsidiary, or agent of Defendant without having provided prior express written consent to Defendant to receive such text message(s).

22. Defendant, its employees and agents are excluded from the Class.

23. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

24. Plaintiff and all Class members have been impacted and harmed by the acts of Defendant or its affiliates or subsidiaries.

25. This Class Action Complaint seeks injunctive relief and monetary damages.

26. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

27. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of manageability, justice, or judicial economy.

28. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

29. <u>Typicality</u>. Plaintiff received at least one SMS text message through the use of an automatic telephone dialing system, without providing her prior express written consent to Defendant within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interest is consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

30. <u>Adequacy</u>. As Class representative, the Plaintiff has no interests adverse to, or which conflict with, the interests of the absent members of the Class, and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Class Action Complaint to add additional Class representatives or assert additional claims.

31. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action.

Counsel are experienced in handling complex class action claims, in particular claims under the TCPA and other data privacy and consumer protection statutes.

32. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

   a) Whether Defendant or affiliates, subsidiaries, or agents of Defendant transmitted advertising or telemarketing text messages to Plaintiff's and Class members' cellular telephones;
   b) Whether such messages were sent using an "automatic telephone dialing system";
   c) Whether Defendant or affiliates, subsidiaries, or agents of Defendant can meet their burden to show Defendant obtained prior express written consent to send the text messages complained of, assuming such an affirmative defense is raised;
   d) Whether the complained of conduct was knowing or willful;
   e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

33. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory

judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cellular telephones. The Class members can be readily located and notified of this class action through Defendant's records and, if necessary, the records of cellular telephone providers.

34. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

35. Defendant or any affiliates, subsidiaries, or agents of Defendant have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

CLASS ACTION COMPLAINT

# CLAIM FOR RELIEF
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

36. Plaintiff incorporates by reference paragraphs 1-35 of this Class Action Complaint as if fully stated herein.

37. The foregoing acts and omissions constitute violations of the TCPA by Defendant, including but not limited to violations of each of the above-cited provisions of 47 U.S.C. § 227.

38. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff and all Class members are entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

39. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff and all Class members are also entitled to, and do seek, an award of statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for each and every text message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

40. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amber Pickett prays for relief and judgment favor of herself and each proposed class member, as follows:

1. Statutory damages of $500.00 (or $1,500.00 for any willful or knowing violations) for each and every text message sent to Plaintiff and every other class member in violation of the TCPA, 47 U.S.C. § 227(b)(1);

2. Injunctive relief prohibiting such violations of the TCPA in the future;

3. An award of attorneys' fees and costs to counsel for Plaintiff and the Class; and

4. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court

deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated: November 28, 2018

Respectfully submitted,

By: /s/ Frank S. Hedin

Frank S. Hedin (SBN 291289)
fhedin@hedinhall.com
David W. Hall (SBN 274921)
dhall@hedinhall.com
Hedin Hall llp
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058

*Counsel for Plaintiff Amber Pickett*